**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gilbert Unified School District No. 41,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CrossPointe, LLC; Joan M. Keebler,<br><br>　　　　　Defendants. | No. CV 11-00510-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendants' Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 41.)  Plaintiff Gilbert Unified School District No. 41's request for oral argument will be denied because its written briefing is sufficient and oral argument would not aid determination of the motion.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

**I.     Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.* at 1949, 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II. Background

On December 9, 2011, after briefing and oral hearing, the District's claims for conspiracy to defraud and fraudulent inducement to enter into the February 14, 2008 Contract[1] were dismissed under the economic loss doctrine. (Doc. 36.) The District's claims for breach of the February 14, 2008 Contract and breach of the duty of good faith and fair dealing arising under the February 14, 2008 Contract were not dismissed. (*Id.*) The December 9, 2011 Order states in detail facts assumed to be true for purposes of deciding the first motion to dismiss, including lengthy quotes from documents attached to or referenced by the Amended Complaint, which will not be repeated here.

On January 13, 2012, the District filed its Second Amended Complaint. (Doc. 38.) The Second Amended Complaint alleges four claims against CrossPointe: (1) breach of the February 14, 2008 Contract; (2) breach of the Master License Agreement; (3) breach of the duty of good faith and fair dealing arising under the February 14, 2008 Contract or

---

[1]The Amended Complaint and the December 9, 2011 Order used the term "February 14, 2008 Contract" to refer to a contract allegedly formed by the District accepting Defendant CrossPointe, LLC's proposal ("Proposal") in response to the District's Request for Proposals ("RFP") and which incorporates the terms of the RFP and the Proposal. The Second Amended Complaint refers to this alleged contract both as the "February 14, 2008 Contract" and "the Contract." Here, it is consistently referred to as the "February 14, 2008 Contract" to distinguish it from the Master License Agreement signed by the District's assistant superintendent, Clyde R. Dangerfield, Esq., on February 20, 2008, and by Defendant Joan Keebler as Chief Executive Officer for CrossPointe on February 26, 2008.

- 2 -

the Master License Agreement; and (4) "contract rescission" because "Keebler's common-law and procurement fraud induced the District to enter into the February 14, 2008 Contract." In addition, the Second Amended Complaint alleges a claim against Keebler personally for fraudulent inducement to enter into the February 14, 2008 Contract.

Defendants now move to dismiss the District's claim against CrossPointe for contract rescission and the claim against Keebler personally for fraudulent inducement as barred by the economic loss doctrine and for failure to plead with sufficient specificity.

**III.  Analysis**

    **A.  The District's Fifth Claim Will Not Be Dismissed.**

CrossPointe moves to dismiss the District's Fifth Claim because rescission is a remedy, not a cause of action. The Fifth Claim, identified as "a contract action for rescission," alleges that the District was fraudulently induced to enter into the February 14, 2008 Contract, the software and services the District received were worthless, and the District has a right to rescind the February 14, 2008 Contract and recover restitution of all amounts it paid to CrossPointe. The First Claim alleges that CrossPointe materially breached the February 14, 2008 Contract by failing to supply the software and services promised, thereby causing the District general, consequential, and incidental damages. The First and Fifth Claims are both pled as contract actions for breach of the February 14, 2008 Contract, one seeking damages and the other seeking rescission and restitution. The Second Amended Complaint has one prayer for relief, which seeks judgment "[a]gainst CrossPointe, for general, consequential, incidental, and other damages for breach of contract and bad faith" and "[a]lternatively, against CrossPointe, for rescission of the February 14, 2008 Contract and restitution." Although it is not necessary to plead two separate claims in order to seek alternative remedies, doing so appears to be harmless duplication. Therefore, the District's Fifth Claim will not be dismissed.

**B.     The District's Fourth Claim Will Be Dismissed Without Leave to Amend.**

**1.     The District's Fourth Claim Does Not Satisfy Fed. R. Civ. P. 9(b).**

Certain elements of fraud claims must satisfy a higher standard of pleading under the Federal Rules of Civil Procedure. In alleging fraud or mistake, a party may allege malice, intent, knowledge, and other conditions of a person's mind generally, but must allege the circumstances constituting fraud or mistake with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Plaintiffs alleging fraud "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Moreover, to state a claim for common law fraud under Arizona law, a plaintiff must plead nine elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury.

*Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291-92, 229 P.3d 1031, 1033-34 (Ct. App. 2010); *see Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (affirming dismissal of common-law fraud claim for failure to plead reasonable reliance as required by state law).

The Second Amended Complaint alleges that Keebler made at least four false representations in CrossPointe's January 10, 2008 Proposal to the District:

1.     "[N]o customer has failed in their efforts to implement and utilize the features and benefits of our application suite."

- 4 -

>   2.   "CrossPointe is currently deployed and operating in a number of states and is complying with all state requirements. The CrossPointe database . . . can meet the reporting requirements of the State of Arizona."
>
>   3.   "CrossPointe Schools OnLine [will] easily meet [Arizona] SAIS extraction and reporting requirements."
>
>   4.   "CrossPointe's staff has years of experience in converting large school districts (greater than 100,000 students) with legacy student systems, such as Pearson's CIMS system, to CrossPointe's products including training all key stakeholders."

The District alleges that the first statement is false because another school district had sued CrossPointe alleging that the student information system and software had failed. The fact that another district made allegations is not evidence that the allegations were true.

The second and third statements predict that CrossPointe's software can and will meet Arizona state reporting requirements. They may be contractual promises later breached, but no factual allegation supports the District's naked allegation that these promises were made with the present intention not to perform. Moreover, the District knew at the time they were made that the software did not meet Arizona state reporting requirements and would require custom design and development to do so.

The District alleges the fourth statement is false because "[t]he CrossPointe staff assigned to the District's project did not have years of experience converting large school districts with Pearson's CIMS system to CrossPointe's products, nor did the staff have years of experience training key stakeholders." The fourth statement asserts that "CrossPointe's staff has years of experience," not that the staff who would be assigned to the District's project would have years of experience.

Thus, the Second Amended Complaint does not plead facts that support its conclusions that each of the four statements was false and Keebler knew that each representation was false or was ignorant of the truth of the representations when they were incorporated into the Proposal. Further, the Second Amended Complaint includes only threadbare recitals of the other seven elements of common-law fraud. Leave to

- 5 -

1 amend the Fourth Claim would be granted if the economic loss doctrine did not make
2 further amendment futile.

### 2. The Economic Loss Doctrine Bars the District's Fourth Claim.

Defendants contend that the District's Fourth Claim against Keebler for fraudulent inducement is barred by the economic loss doctrine, which limits a contracting party to contractual remedies for the recovery of purely economic loss unaccompanied by physical injury to persons or other property. *See Flagstaff Affordable Housing Limited Partnership v. Design Alliance, Inc.*, 223 Ariz. 320, 323, 223 P.3d 664, 667 (2010). Arizona law defines "economic loss" as "pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits." *Id.*

Application of the economic loss doctrine depends on context-specific policy considerations. *Id.* at 325, 223 P.3d at 669. Contract law "seeks to encourage parties to order their prospective relationships, including the allocation of risk of future losses and the identification of remedies, and to enforce any resulting agreement consistent with the parties' expectations." *Id.* Tort law promotes safety by deterring accidents and spreads the loss from accidents. *Id.* In certain contexts, the policies of accident deterrence and loss-spreading will not require permitting tort recovery in addition to contract remedies, and "the policies of the law generally will be best served by leaving the parties to their commercial remedies." *Id.* at 669-70.

Here, as previously found, both the District and CrossPointe were sophisticated and of equal bargaining power. They anticipated a possible breach of their commercial contract and ordered their prospective relationship, including allocating risks and identifying remedies. The District seeks recovery of purely economic loss unaccompanied by physical injury to persons or other property. Permitting recovery in tort would not promote safety or spread the loss from accidents. Thus, the economic loss doctrine limits the District to contractual remedies for its purely economic loss.

Moreover, casting the fraud claim as fraudulent inducement does not avoid the economic loss doctrine because the allegedly false statements made to induce the District to enter into the February 14, 2008 Contract are part of the contract itself. Even if the statements were false, they are incorporated into the February 14, 2008 Contract as contractual promises for which there are contractual remedies if breached.

Focusing the District's fraudulent inducement claim on Keebler personally instead of on CrossPointe does not avoid the economic loss doctrine, even though Keebler is not a party to a contract with the District. Although the Arizona courts have not addressed this specific issue in a published opinion, the policy considerations identified in *Flagstaff* support applying the economic loss doctrine to preclude tort recovery against a corporate officer of the contracting party where it precludes tort recovery against the corporate contracting party. *See Ben-Yishay v. Mastercraft Dev. LLC*, 553 F. Supp. 2d 1360, 1370 (S.D. Fla. 2008); *Foxworthy, Inc. v. CMG Life Servs., Inc.*, No. CV11-2682, 2012 WL 1269127, at *2-4 (N.D. Ga. April 16, 2012).

In *Ben-Yishay*, the plaintiff's claims for fraudulent misrepresentation did not give rise to an independent cause of action in tort against a member and officer of the contracting entity because the representations were inseparable from the essence of the contractual agreement and the rationale for applying the economic loss doctrine applied whether the tort claims were asserted against the contracting entity or the corporate officer:

> This analysis is not affected by the fact that Lap, a member of Mastercraft and officer of MS, was not a signatory of the Agreements. The rationale of the economic loss rule is to limit a party to the recovery of purely economic damages suffered in a contractual setting. This rationale, which limits the Ben-Yishays to the damages recoverable from breach of the Agreements, applies with equal force whether the fraudulent inducement and misrepresentation claims are asserted against Mastercraft and MS, or against Lap. To find otherwise would lead to the incongruous result that the economic loss rule would bar applicable tort claims against a corporation, but not against the directors or officers who negotiated the agreement. Such an outcome would be inconsistent with the rationale of the economic loss rule and would eviscerate its application in cases where a corporation is a party to the agreement. . . . Given that a corporation can only act through its employees, it would completely undermine the contractual privity economic loss rule to allow any party which contracts with a corporation to

- 7 -

> avoid the rule by simply bringing its tort claim directly against the corporate officers or employees tasked with performing the contract on behalf of the corporation.

553 F. Supp. 2d at 1371 (internal quotation marks and citations omitted); *accord Foxworthy*, 2012 WL 1269127, at *2-4 (applying economic loss doctrine to tort claims against members and officers of the contracting entity who acted on behalf of the contracting entity).

Here, too, the alleged misrepresentations are "inseparable from the essence of the contractual agreement." *See Ben-Yishay*, 553 F. Supp. 2d at 1370-71. The Second Amended Complaint alleges that CrossPointe materially breached the February 14, 2008 Contract by failing to develop and install a student information system that functioned properly and would enable the District to meet the Arizona Student Accountability Information System ("SAIS") reporting requirements. It further alleges that Keebler made misrepresentations in CrossPointe's Proposal, which is a part of the February 14, 2008 Contract. The misrepresentations include stating that CrossPointe's student information system would easily meet SAIS requirements and its database could meet Arizona's reporting requirements.

Further, Keebler acted as an officer of and on behalf of CrossPointe. The Second Amended Complaint alleges that "Keebler *authored* these representations" by communicating them "to other CrossPointe employees *with the intent that they would communicate the representations to the District* to induce the District to enter the Contract," "CrossPointe, in fact, published the representations to the District," "Keebler participated in communicating the representations to the District by signing the RFP submission letter to the District," and "[i]n the letter, Keebler represented to the District that she had personal knowledge of the proposal's contents, and she *expressly authorized* the representations in the proposal" as chief executive officer of CrossPointe.[2] The Second Amended Complaint alleges that "CrossPointe knowingly incorporated Keebler's

---

[2] Italics in the original.

- 8 -

1  fraudulent representations into the proposal CrossPointe submitted in response to the
2  RFP" and "Keebler's fraudulent representations became CrossPointe's fraudulent
3  representations."
4        Therefore, the economic loss doctrine bars the District's fraudulent inducement
5  claim against Keebler because the allegedly false representations are inseparable from the
6  essence of the contractual agreement between the District and CrossPointe, Keebler made
7  them as CrossPointe's chief executive officer on behalf of CrossPointe, and the doctrine
8  would bar a fraudulent inducement claim against CrossPointe on the alleged facts.  The
9  District may not circumvent the economic loss doctrine, which bars tort recovery from
10 CrossPointe, by asserting tort claims against its chief executive officer, who acted on
11 behalf of CrossPointe and whose allegedly false statements were adopted by CrossPointe.
12       Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P.
13 15(a)(2).  Factors to be considered when deciding whether to grant leave to amend
14 include the repeated failure to cure deficiencies by previous amendment and the futility of
15 further amendment.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.
16 1989).  The district court's discretion to deny leave to amend a complaint is "especially
17 broad" where the plaintiff already has had one or more opportunities to amend his
18 complaint.  *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989).
19 "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."
20 *Moore*, 885 F.2d at 538.  Because further amendment of Plaintiff's Fourth Claim would
21 be futile, it will be dismissed without leave to amend.
22       IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Second
23 Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 41) is granted in part and
24 denied in part.
25 .....
26 .....
27 .....
28 .....

- 9 -

1    IT IS FURTHER ORDERED that the Fourth Claim of the Second Amended Complaint is dismissed without leave to amend.

DATED this 2nd day of May, 2012.

_____
Neil V. Wake
United States District Judge